UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
Mario H. Guevara-Salgado,               )
                                        )
         Plaintiff,                     )
                                        )
v.                                      )
                                        )
Hayes-Meninno, LLC,                     )
d/b/a Rolly's Tavern on the Square,     )
Wendy Meninno Hayes                     )       C.A. No. 1:15-cv-12294
and Roland John Hayes                   )
                                        )
         Defendants,                    )
                                        )
and                                     )
                                        )
338 Broadway, LLC,                      )
                                        )
         Reach-And-Apply Defendant.     )
_____)

**<u>MEMORANDUM IN SUPPORT OF THE PLAINTIFF'S MOTION FOR APPROVAL
OF ATTACHMENT OF REAL ESTATE IN THE NAME OF THE DEFENDANT
WENDY MENINNO HAYES, A.K.A. WENDY M. HAYES, AND THE REACH & APPLY
DEFENDANT, 338 BROADWAY LLC, AND PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION ON ALL THE DEFENDANTS AND
THE REACH & APPLY DEFENDANT</u>**

NOW COMES the Plaintiff, Mario H. Guevara-Salgado ("Mr. Guevara" or "Plaintiff"),

in the above-captioned action, and who hereby submits his Memorandum In Support of his

Motion for Real Estate Attachment and Motion for Preliminary Injunction in order to allot pre-

judgment security to Mr. Guevara's (without limitation) wages, overtime compensation,

liquidated damages and to otherwise maintain the *status quo* relating to the assets of the

Defendants, Hayes-Meninno LLC, Wendy Meninno Hayes, John Roland Hayes, and the Reach

& Apply Defendant, 338 Broadway, LLC.

As Grounds Therefore, Mr. Guevara avers: (1) that he has a high likelihood of succeeding on the merits of his claims for wages, overtime compensation, liquidated damages, and/or attorney's fees against the Defendants and Reach & Apply Defendants, (2) that the Defendants may, absent the requested Court's order, conceal assets to avoid paying a judgment, (3) that the Plaintiff, absent the requested Court's order, shall be irreparably harmed by the Defendants because there may be no other means to remedy Plaintiff's harms, (4) that the requested Court's order merely preserves the *status quo*, and (5) that the requested Court's order must be allowed to achieve justice and compensate Mr. Guevara for hundreds of hours that he worked from late 2012 to early 2015, largely without wages and entirely without overtime compensation.

Because the Defendants have no known liability insurance available to satisfy a judgment, which Mr. Guevara has a very reasonable likelihood of obtaining, the Plaintiff respectfully moves this Honorable Court to GRANT a Real Estate Attachment against the real estate properties owned by Defendant Wendy Meninno Hayes, a.k.a. Wendy M. Hayes, and Reach & Apply Defendant 338 Broadway, LLC, to wit: 1 Boulder Way, Lynn, Essex County, Massachusetts and 338 Broadway, Lynn, Essex County, Massachusetts, respectively. The Plaintiff also respectfully moves this Honorable Court to GRANT a Preliminary Injunction against the Defendants, Hayes-Meninno, LLC, Wendy Meninno Hayes, John Roland Hayes and the Reach & Apply Defendant, 338 Broadway, LLC, from encumbering or transferring their assets while this litigation is pending.

## FACTUAL BACKGROUND

Mr. Guevara has brought suit against the Defendants and the Reach & Apply Defendant (1) for failure to pay overtime compensation in violation of the Fair Labor Standards Act

("FLSA"), 29 U.S.C. § 207(a)(1); (2) for failure to pay wages in violation of the Wage Act, Mass. Gen. Laws Ch. 149, § 148; (3) for failure to pay minimum wages in violation of Mass. Gen. Laws Ch. 151, § 1, and FLSA, 29 U.S.C. § 206; (4) for breach of contract; (5) for breach of the implied covenant of good faith and fair dealing; (6) for quantum meruit; (7) for promissory estoppel; and (8) for reach-and-apply relief.

Defendant Hayes-Meninno, LLC operates Rolly's Tavern on the Square ("Rolly's Tavern"), a restaurant located at 338 Broadway, Lynn, Essex County, Massachusetts.  Compl. ¶ 11, July 6, 2015.  To our knowledge from the Defendants' own representations to (without limitation) the Plaintiff, Defendants Roland John Hayes and Wendy Meninno Hayes are the sole owners and officers of Defendant Hayes-Meninno, LLC and Reach-and-Apply Defendant 338 Broadway, LLC. Compl. ¶ 13; *see also* Pl.'s Aff'd. ¶¶ 21-22 (annexed as Exhibit "A"). Reach-and-Apply Defendant 338 Broadway, LLC owns the real property on which the restaurant operates.  Accordingly, Roland and Wendy Hayes are in a position to benefit and so did benefit financially from the (uncompensated and undercompensated) hours worked by Mr. Guevara at Rolly's Tavern during the period relevant to the present suit.  Compl. ¶ 14. During this same relevant period, Defendants Roland and Wendy Hayes had power to hire and fire employees of Rolly's Tavern, and also to set Rolly's Tavern's employees' schedules and wages, and periodically exercised those powers. Compl. ¶¶ 15-16. Mr. Guevara was not immune to these powers, as Defendants Roland and Wendy Hayes set Mr. Guevara's wages and work schedule. *Id.* ¶¶ 17-18; *see also* Ex. A, Pl.'s Aff'd. ¶ 3, Exs. B (excerpted text message between Mr. Guevara and Roland Hayes) & C (excerpted text messages between Mr. Guevara and Wendy Hayes).

In or about November 2011, Mr. Guevara began working at Rolly's Tavern one day a week at a rate of $11 per hour. Compl. ¶ 19; *see also* Ex. A, Pl.'s Aff'd. ¶ 2. Mr. Guevara's duties included, but were not limited to: cleaning, cooking at the restaurant and catering events, purchasing food, paper, coffee, and soda for the restaurant, and ensuring that the restaurant's inventory was delivered on time. Compl. ¶ 20; *see also* Pl.'s Aff'd. ¶ 4. In or about mid-2012, Mr. Guevara began working three days a week for a total of about 25 hours a week. Compl. ¶ 21; *see also* Pl.'s Aff'd. ¶ 5. During this time, Mr. Guevara's pay increased to $13 per hour. Compl. ¶ 22; *see also* Pl.'s Aff'd. ¶ 5. In or about November 2012, Mr. Guevara began working for Rolly's Tavern on a full-time basis: five days a week for more than 45 hours per week, without overtime compensation. Compl. ¶ 23*; see also* Pl.'s Aff'd. ¶¶ 6, 11.

Later, Mr. Guevara's pay was raised to $15 per hour. Compl. ¶ 26; *see also* Ex. A, Pl.'s Aff'd. ¶ 9. And around Christmas of 2012, the Plaintiff, Mr. Guevara, began working particularly long hours during the week; approximately 77 hours per week. Compl. ¶¶ 27-28; *see also* Pl.'s Aff'd. ¶ 10. For these long hours, once again, Defendants Roland and Wendy Hayes did not pay Mr. Guevara overtime compensation, and, moreover, failed to pay Mr. Guevara for all hours worked. Compl. ¶ 29; *see also* Pl.'s Aff'd. ¶¶ 11, 14.

Defendant Roland Hayes, in or around early 2013, reached an agreement with Mr. Guevara under which Mr. Guevara would receive a salary of $900 per week, for a 50-hour workweek. Compl. ¶ 30; see also Ex. A, Pl.'s Aff'd. ¶ 12. Despite this agreement representing a 50-hour workweek, Rolly's Tavern continued to require and receive the benefit of Mr. Guevara's services approximately 77 hours per week. Compl. ¶ 31; *see also* Pl.'s Aff'd. ¶ 13. The Defendants routinely and for prolonged periods did not pay Mr. Guevara's wages, here the promised salary. Compl. ¶ 32; *see also* Pl.'s Aff'd. ¶¶ 14-20. Mr. Guevara frequently asked

Defendant Roland Hayes for his (Mr. Guevara's) paycheck. Compl. ¶¶ 32-33; *see also* Pl.'s Aff'd. ¶ 15. Defendant Roland Hayes replied asking Mr. Guevara to wait for his paychecks. Pl.'s Aff'd. ¶ 17. The Defendants only paid Mr. Guevara a fraction the salary he was owed. Pl.'s Aff'd. ¶ 15.

In or about 2013, when the Defendants failed to pay Mr. Guevara for 11 consecutive weeks of work, Mr. Guevara confronted Defendant Roland Hayes about his past-due wages. Compl. ¶ 34 *see also* Ex. A, Pl.'s Aff'd. ¶ 16. Defendant Roland Hayes again asked Mr. Guevara to wait to receive his wages. Pl.'s Aff'd. ¶ 17. Approximately two months later, Mr. Guevara had still not received any of his earned wages and he confronted Mr. Hayes once again. Compl. ¶¶ 35-36; *see also* Pl.'s Aff'd. ¶ 18. In response, Defendant Hayes told Mr. Guevara, "Nothing makes you happy." *Id.* ¶ 37; *see also* Pl.'s Aff'd. ¶ 19. However, in the same conversation, Defendant Roland Hayes asked Mr. Guevara to be a kitchen manager, asked Mr. Guevara to wait to receive his wages, and promised Mr. Guevara 50% ownership of the business and 50% of the profits in exchange for waiting for his (long overdue) wages. Compl. ¶ 38 *see also* Pl.'s Aff'd. ¶ 20. Mr. Guevara accepted these offers. Compl. ¶ 39; *see also* Pl.'s Aff'd. ¶ 23.

In reliance of Defendant Roland Hayes' promise of co-ownership of Rolly's Tavern, Mr. Guevara went as much as six (6) months without receiving any wages for his work in the restaurant. Compl. ¶ 40; *see also* Ex. A, Pl.'s Aff'd. ¶ 24. Moreover, in or about March of 2014, Mr. Guevara's hours increased to approximately 90 to 100 hours per week. Compl. ¶ 41; *see also* Pl.'s Aff'd. ¶ 25. These staggeringly long hours lasted until January 19, 2015, when Mr. Guevara tendered his resignation. Compl. ¶ 42; *see also* Pl.'s Aff'd. ¶ 26. Nevertheless, Mr. Guevara continued to work for an additional month, upon Defendant Roland Hayes' request; ending with

his (Mr. Guevara's) last day of work on or about February 28, 2015.  Compl. ¶¶ 43-44; *see also* Pl.'s Aff'd. ¶¶ 27-28.

Despite their promises, the Defendants never paid Mr. Guevara any profits made in the restaurant, and only paid Mr. Guevara small, sporadic amounts of wages that were much less than that which was actually owed. Compl. ¶¶ 45-46; *see also* Ex. A, Pl.'s Aff'd. ¶ 30.  However, for the most part, Mr. Guevara continued to work without wages and with the expectation of being paid for his hours worked and the ownership of the business as promised. Compl. ¶ 47; *see also* Pl.'s Aff'd. ¶ 31. After nearly two years, in or about late January 2015, Mr. Guevara still did not receive any profits from the restaurant; therefore, Mr. Guevara demanded wages for the years of work he rendered without compensation. Compl. ¶¶ 48-49; *see also* Pl.'s Aff'd. ¶¶ 32-34. Each time Mr. Guevara confronted the Defendant, Roland Hayes, he (Roland Hayes) told Mr. Guevara he would pay the wages, but continuously avoided Mr. Guevara and continued to withhold Mr. Guevara's wages. Compl. ¶ 50; *see also* Pl.'s Aff'd. ¶ 34. Mr. Guevara decided he could not continue to work without wages and, in early 2015, he informed Defendants that he was resigning from his job. Compl. ¶ 41; *see also* Pl. Aff'd. ¶ 26.

Following Mr. Guevara's resignation, the Defendants pressured the Plaintiff to sign a document setting forth a $77,214 payment plan by the Defendants to the Plaintiff.  Ex. A, Pl.'s Aff'd. ¶¶ 35, 37, 40-43; *see also* Ex. F. The $77,214 amount is only a fraction of the wages that these Defendants owe him and does not include, nor make any mention of, overtime compensation or liquidated damages.  Ex. A, Pl.'s Aff'd. ¶ 36; *see also* Exs. E & F. Defendants sent Mr. Guevara two e-mails claiming the Defendants owe the Plaintiff monies for services, specifically admitting to owe the Plaintiff $77,214.00 in payments as an alleged "subcontractor." *Id.*

When Mr. Guevara would not sign Defendants' proposal and refused to cash weekly checks he received; the Defendants coerced, intimidated, and threatened the Plaintiff. Ex. A, Pl.'s Aff'd. ¶¶ 40-43. For example, Defendant Wendy Hayes requested a meeting with Plaintiff at which she screamed at him, menacing Mr. Guevara that if he did not sign the paper, she will lie under oath to have him deported. Compl. ¶ 59. Ms. Hayes threatened Mr. Guevara, telling him that no one will believe him, because she (Ms. Hayes) has terminal cancer and has six months to live.  Pl.s' Aff'd. ¶¶ 40-41.  The Defendants further have threatened Mr. Guevara by engaging Mr. Guevara's old co-workers to pressure him to accept the Defendants' unfair proposal since otherwise "bad things could happen."  Pl.'s Aff'd. ¶ 43.

Although Mr. Guevara refused to sign the document setting forth a payment plan, Defendants tendered to Mr. Guevara approximately $32,000 before this action was filed. After this action ensued, Defendants tendered an additional $2,500. As addressed below, Defendants remain liable to Mr. Guevara for an amount in excess of the attachment sought herein.

## ARGUMENT

Fed. R. Civ. P. 64 authorizes "the Court to grant 'every remedy that, under the law of the state where the court is located, provides for a seizing of person or property to secure satisfaction of the potential judgment.'" *Erkan v. New Eng. Compounding Pharmacy Inc.*, No. CIV.A. 12-12052-FDS, 2012 WL 5896530, *1 (D.Mass. Nov. 21, 2012) (quoting M*etro. Prop. & Cas. Ins., Co. v. Boston Reg. Physical Therapy, Inc.*, 550 F.Supp.2d 199, 201 (D.Mass. 2008)). Thus, this Court looks to Massachusetts law, which permits a pretrial attachment where the plaintiff demonstrates "(1) a reasonable likelihood of success on the merits, and (2) a reasonable likelihood of recovering judgment equal to or greater than the amount of the attachment sought over and above any liability insurance shown by defendant to be available to satisfy judgment."

7

*Erkan*, 2012 WL 5896530 at *1 (quoting Mass. R. Civ. P. 64). The movant's likelihood of

success on the merits "weighs heaviest in the decisional scales." *Coquico, Inc. v. Rodriguez-*

*Miranda*, 562 F.3d 62, 66 (1st Cir. 2009).

The Plaintiff request respectfully as preliminary injunction pursuant to Fed. R. Civ. P.

Rule 65 (a)(1), enjoining the Defendants and Reach & Apply Defendant from alienating,

conveying, transferring or hypothecating or otherwise disposing of any beneficial interest held

by the Defendants and Reach & Apply Defendants, pending this action.  Plaintiff respectfully

requests that he not be required to post bond in light of the Defendants' willful and egregious

violations of law toward the Plaintiff.  Absent the Court's Preliminary Injunctions, the Plaintiff

will suffer irreparable harms and injuries.

    A. **The Plaintiff has a high likelihood of succeeding and obtaining Judgment against the Defendants for which reason this Court must ALLOW the Plaintiff's Motion for Real Estate Attachment and Motion for Preliminary Injunctions.**

As to success on the merits, Plaintiff worked more than 40 hours per week in his

employment from approximately January 2013 to February 28, 2015, without being paid both

ordinary wages and overtime compensation.  Ex. A, Pl.'s Aff'd. ¶¶ 11, 14-15, 18, 24, 31; Compl.

¶¶ 24, 29, 32, 35-36, 40, 45-47. Without limitation, during this time, Mr. Guevara worked 77 to

100 hours each week, was not paid his ordinary wages nor overtime compensation, and went as

long as six (6) months without a paycheck.  Compl. ¶ 40; *see also* Pl.'s Aff'd. ¶ 24.  As the

Defendants' debt of payment of wages owed to Mr. Guevara increased, the more promises the

Defendants made to Mr. Guevara, from increased wages to a 50% partnership or ownership of

the restaurant, Defendant Hayes-Meninno, LLC.  Compl. ¶ 47; *see also* Pl.'s Aff'd. ¶ 31.

In letters dated February 16 and March 19, 2015, Roland Hayes admitted that Rolly's

Tavern owed Mr. Guevara monies for work performed for Rolly's Tavern. *See* Exs. E & F. In

fact, after Mr. Guevara resigned, the Defendants pressured the Plaintiff to sign one the later letter setting forth a $77,214 proposed payment plan by the Defendants to the Plaintiff.  Pl.'s Aff'd. ¶¶ 35, 37, 40-43; *see* Ex. F. The $77,214 amount is only a fraction of the wages, overtime compensation and/or liquidated damages that these Defendants owe him. Pl.'s Aff'd. ¶ 36. The two letters — signed by Defendant Roland Hayes and printed on Rolly's Tavern letterhead — are admissible as an admission of party opponent and further establishes the Plaintiff high likelihood of prevailing in this action. *See* Exs. E & F.

Further, Plaintiff has in his possession 118 pages of text messages from Defendant Roland Hayes, and 45 pages of text messages from Defendant Wendy Hayes corroborating Mr. Guevara's high likelihood of prevailing in the merits and the veracity of Plaintiff's affidavit attached as Exhibit "A".  (Excerpts of those messages are attached hereto as Exhibits "B" and "C"). These text messages from the period of October 22, 2014 to May 24, 2015 depict Mr. and Ms. Hayes telling Mr. Guevara to make the restaurant specials; prepare dishes; purchase/order/receive inventory; notify who is working; cater events; shovel snow; make deliveries; purchase supplies; and open and close the restaurant. *See* Ex. B & C. These text messages range as early as 8:30 a.m. in the morning to the late evening, showing Mr. or Ms. Hayes telling Mr. Guevara: "Who opens in kitchen today," "Don't forget specials I get on plane at 2:30," "Did you do specials" "Send me specials when u have done", "Order finger rolls…," "Stay till she closes"; "Can u bring the flowers the wine and beer over in 30 min if it's not too busy" Ex. B & C.

These messages depict the last months of Mr. Guevara's employment and the Defendants' heavy reliance on Mr. Guevara's (uncompensated) services for Defendant's benefit. Exs. B & C. These texts and Mr. Guevara's affidavit support the Plaintiff's staggeringly long

hours, Defendants' dependence on his services, and how such a vast dependence developed over many.  See Exhibits A-C.  Notwithstanding Mr. Guevara's long hours working at Rolly's Tavern; the Defendants refused willfully to pay him for his services.

**B.** **The Plaintiff has high likelihood of proving that the Defendants willfully and in bad faith violated the FLSA and Massachusetts wages laws, for which reason this Court must ALLOW the Plaintiff's Motion for Real Estate Attachment in the amount of $250,000 and Motion for Preliminary Injunctions.**

      1.      **Massachusetts Law required Defendants to pay Mr. Guevara's wages within the time set forth in the statute, and Defendants failure to do so exposes them to mandatory treble damages, attorneys' fees and costs.**

The Massachusetts Wage Act, G.L. 149, § 148, ("the Wage Act") requires employers to pay employees' wages within strict time limits — typically within six (6) days of the termination of a one- or two-week pay period. M.G.L. c. 149, § 148. Failure to do so creates liability for unpaid wages, (mandatory) treble damages, attorney's fees and costs. M.G.L. c. 149, § 150. Under Wage Act, Defendants Hayes-Meninno, LLC, Wendy Meninno Hayes and Roland John Hayes are all "employers" liable for the failure to pay timely wages. *See* M.G.L. c. 149, § 148 ("[A]ny officers or agents having the management of such corporation shall be deemed to be the employers of the employees of the corporation within the meaning of this section.").

The statute is also plain that Mr. Guevara is an "employee" of Defendants, and therefore, that the time constraints in the statute applied to his wages. *See* M.G.L. c. 149, §§ 148, 148B. An individual is an "employee," under the statute *unless all three of these criteria are met*:

      (1) the individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact; and

      (2) the service is performed outside the usual course of the business of the employer; and,

      (3) the individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed.  G.L. c. 149, § 148B.

None of these criteria is met here. First, Text messages between Mr. Guevara and Defendants and Mr. Guevara's affidavit illustrate the extensive control they had over his work. Ex. "B"; *See* Pl. Aff'd at ¶¶ 3,4, 10-20, 23-25. Second, Mr. Guevara's services at the restaurant — which included but were not limited to making the special; preparing food; purchasing and receiving inventory; catering events; shoveling show; and cleaning — were performed inside the usual course of its business as a restaurant. Pl. Aff'd. ¶ 4; Compl. ¶ 20; *see also generally* Exs. B & C. Third, and finally, Mr. Guevara was not engaged in an independently established trade, occupation, profession or business; he worked as much as 100 hours per week for Defendants and was employed by them for four years.

Employers may not eschew their obligation to pay timely wages by "special contract." M.G.L. c. 149, § 148. *See* Dobin v. CIOview Corp., No. CIV.A. 2001-00108, 2003 WL 22454602, at *5 (Mass. Super. Ct. Oct. 29, 2003) ("The apparent purpose of this provision was to bar employers from inducing their employees to waive or otherwise surrender the protections they are provided under the Wage Act. The provision is unconditional; it sets forth no circumstance in which such a waiver would be lawful."). Thus, Defendants' promise of co-ownership — a promise that they never fulfilled — cannot rescue them from the Wage Act. *See id.* at *3-6 (voluntary agreement to defer salary violated the Wage Act). Nor can Defendant Roland Hayes' labeling of Mr. Guevara as a "subcontractor" affect Defendants' liability for wages.[1] Exs. E & F. *See* M.G.L. c. 149, § 148.

The three Defendants face liability for Mr. Guevara's unpaid wages, (mandatory) treble damages, attorneys' fees, and costs. M.G.L. c. 149, § 150 ("An employee so aggrieved who prevails in such an action shall be awarded treble damages, as liquidated damages, for any lost

---

[1]    In any event, Mr. Guevara plainly was not a "subcontractor" of any entity. By way of example and without limitation. Hayes-Meninno, LLC, issued Mr. Guevara a W-2 for 2014. *See* Ex. G.

wages and other benefits and shall also be awarded the costs of the litigation and reasonable attorneys' fees."). Those damages are substantial.

As set forth in Mr. Guevara's affidavit, Defendants repeatedly — and sometimes for months at a time — failed to pay the $900-per-week salary promised to Mr. Guevara in beginning in 2013 or Christmas 2012 through February 28, 2015.   By Defendant Roland Hayes' admission, Defendants failed to pay Mr. Guevara compensation in excess of $77,000. *See* Exs. E & F. Mr. Guevara believes this estimate is low. Pl. Aff'd. ¶ 36.

"At its peril," the employer must "keep track of the amount of overtime worked by those of its employees in fact within the Act." *George Lawley & Son Corp. v. South*, 140 F.2d 439, 442 (1st Cir. 1944). *See Solis v. SCA Rest. Corp.*, 938 F.Supp.2d 380, 397-98 (E.D.N.Y. 2013) (employers must keep records that " state, among other things, 'the time of day and day of week on which the employee's workweek begins,' 'hourly rate of pay for any workweek in which overtime compensation is due,' 'the monetary amount paid on a per hour, per day, [or] per week . . . basis,' the 'hours worked each workday and total hours worked each workweek,' 'total daily or weekly straight-time earnings or wages due for hours worked . . . exclusive of premium overtime compensation' and 'total premium pay for overtime hours.'") (quoting 29 C.F.R. § 516.2(a)).

Defendants' sparse recordkeeping, makes estimating damages difficult. Ex. A, Pl.'s Aff'd. ¶ 7.  A W-2 form issued by Hayes-Meninno, LLC to Mr. Guevara states that the restaurant paid him $8,000 in wages 2014; for the purposes of this motion, and without access to Defendants' wage records, Plaintiff assumes that this figure proffered by Defendants is accurate. *See* Ex. G. These 2014 wages of $8,000 are $38,800 less than the approximately $46,800 Mr. Guevara would have been paid, had he received the weekly salary that Defendants agreed to pay

him.[2]  Mr. Guevara also worked approximately several weeks in 2015 without any compensation making his 2015 unpaid wages an additional $3,400.  Ex. A, Pl. Aff'd. ¶¶ 33-37. Thus, it appears that Defendants failed to pay Mr. Guevara at least $42,200 in wages in 2014 and 2015.

Thus, with treble damages, Defendants are liable to Guevara in the amount of **$126,600 for 2014 and 2015 alone**. This does not include unpaid wages from 2013, nor does it include attorney's fees, costs, and overtime compensation.

**2.      Defendants willfully violated the FLSA by failing to pay Mr. Guevara both ordinary wages and overtime compensation.**

The FLSA generally requires employers to pay employees minimum wages and overtime compensation. *See* 29 U.S.C. §§ 206, 207(a). "[A]ny person acting directly or indirectly in the interest of an employer in relation to an employee" is an "employer" under the statute and may be liable for failure to pay overtime compensation or other wages under the FLSA. 29 U.S.C. § 203(d). *See Donovan v. Agnew*, 712 F.2d 1509, 1512-14 (1st Cir. 1983) (traditional notions about "piercing the corporate veil" to achieve individual liability do not apply under the FLSA). "[T[hose who have operating control over employees within companies may be individually liable for FLSA violations committed by the companies . . . ." *Gray v. Powers*, 673 F.3d 352, 357 (5th Cir. 2012). Thus, Defendant Hayes-Meninno, LLC and Defendants Wendy Meninno Hayes and Roland John Hayes — as the sole owners and managers of that LLC — may be liable personally under the FLSA with respect to wages payable to employees of Hayes-Meninno, LLC, including Mr. Guevara. *See* Ex. B & C.

In withholding Mr. Guevara's wages, Defendants' habitually violated the FLSA's minimum-wage mandate, 29 U.S.C. § 206. Moreover, Guevara nearly always worked more than 40 hours per week; he averaged 90-100 hours week after week in 2014 and 77 hours each week

---

[2]      This does not include overtime compensation.  *See* Section (B)(2) of Argument, *infra*.

in 2013. Ex. A, Pl.'s Aff'd. ¶¶ 10, 13, 25, 26.   Yet, Defendants failed to compensate him at a rate of at least 1.5 times his regular rate of pay for those hours worked in excess of 40 per week. Ex. A, Pl.'s Aff'd. ¶ 8, 11. This violated the FLSA's overtime mandate, 29 U.S.C. § 207(a)(1), as well.

The Massachusetts Wage Act, G.L. c. 149, § 148, requires the timely payment of *all* wages due, including those mandated by other laws such as the FLSA. *See Carroca v. All Star Enterprises*, No. 1:12-cv-11202-DJC, 2013 WL 3496537, *4 (D.Mass. June 10, 2013). This holds true even when overtime compensation is not separately mandated by Massachusetts law. *Id.* Thus, Defendants' failure to pay Mr. Guevara overtime compensation exposes them to treble damages, without regard to intent, and is subject to a three-year statute of limitations. *See id.*; G.L. c. 149, § 150.

It is worth noting that even in the absence of the Wage Act, Defendants would be liable for liquidated damages[3] and a three-year statute of limitations under federal law. The FLSA imposes liability for liquidated damages, unless the Defendants can prove good faith. *Chao v. Hotel Oasis, Inc.*, 493 F.3d 26, 36 (1st Cir. 2007) (citing 29 U.S.C. § 260). *See Haro v. City of Los Angeles*, 745 F.3d 1249, 1259 (9th Cir. 2014) ("Liquidated damages are 'mandatory' unless the employer can overcome the 'difficult' burden of proving both subjective 'good faith' and objectively 'reasonable grounds' for believing that it was not violating the FLSA.").

The statute also imposes a three-year, rather than two-year, statute of limitations when the plaintiff can show the statute was willfully violated. *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 134 (1988) (FLSA violation is willful where "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute").

---

[3]   Mr. Guevara does not argue that Defendants would be liable for *both* treble damages under the Wage Act and liquidated damages under the FLSA. *Carroca*, 2013 WL 3496537, at *4. Rather, judgment should enter in the amount of the greater of the two. *Id.*

Mr. Guevara can prove the Defendants' reckless disregard of its obligations under the FLSA. The Defendants kept no time records; kept indisputably inaccurate wage records and induced the Plaintiff to continue working without pay in exchange of false promises of more compensation; declined to keep track of Mr. Guevara's hours, despite his repeated requests that they do so; and largely ignored Mr. Guevara's repeated pleas to be paid wages. Ex. A, Pl.'s Aff'd. ¶ 7, 14-20, 23, 29, 31. *See Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 844 (6th Cir.2002) ("[T]he fact that an employer knowingly under-reported its employee's work hours could suggest to a [fact finder] that the employer was attempting to conceal its failure to pay overtime from regulators, or was acting to eliminate evidence that might later be used against it in a suit by one of its employees."). Rather, the Defendants, particularly Mr. Hayes, promised Plaintiff more and more money, even 50% of the business, when Mr. Guevara asked and re-asked to be paid for his weeks already worked.  Compl. ¶ 38 *see also* Pl.'s Aff'd. ¶ 20. Compl. ¶ 39, *see also* Pl.'s Aff'd. ¶ 23.

The Defendants' own threats and intimidation to Mr. Guevara further prove their willful design to violate the wage laws both at the federal and state levels.  Pl.'s Aff'd. ¶¶ 40-43.   In or about April 28, 2015, Wendy Hayes attempted to intimidate Mr. Guevara into signing documents, menacing him that she will lie under oath to place him in jail and that no one would believe him over her since she has six months to live.  Pl.'s Aff'd. ¶¶ 40-42. Further, Mr. Guevara's former co-worker has been pressuring him to sign the agreement or checks because otherwise "bad things could happen."  Ex. A, Pl.'s Aff'd ¶ 43.  The Defendants have repeatedly attempted to coerce, intimidate and threaten Mr. Guevara into forgoing this action, all of which underscore the willfulness of Defendants' conduct.

For the purposes of seeking an attachment, Mr. Guevara makes respectfully a preliminary estimate of his damages.    Because Defendants did not keep accurate records of Mr. Guevara's long hours and because they largely failed to provide him with pay stubs,[4] Plaintiff relies largely on his own memory in estimating his unpaid overtime compensation. *See Perez v. Oak Grove Cinemas, Inc.*, 68 F. Supp. 3d 1234, 1249 (D. Or. 2014) ("because Defendants failed to keep or preserve records of their employees' time, Plaintiff's burden is to produce 'some evidence' to show the amount of work' 'as a matter of just and reasonable inference'"); *see generally* Pl.'s Aff'd.

For the purposes of this motion, Plaintiff has estimated his unpaid overtime compensation as follows as confirmed by his Affidavit:

| Time Period | Regular Rate of Pay (Actual or Promised) | Hrs./Wk | Unpaid Overtime/Week | Subtotal |
|---|---|---|---|---|
| ≈ Nov. 1, 2012- ≈Christmas Eve 2012 (about 7 weeks, rounded down) | $13/hr. | 55 (15 OT) | $32.50 | $227.50 |
| ≈Christmas 2012 – ≈ January 31, 2013 (about 5 weeks, rounded down) | $15/hr. | 77 (27 OT) | $277.50 | $1,387.50 |
| ≈ February 1, 2013- ≈ February 28, 2014 (56 wks.) | $22.50 (= $900/wk. / 40 hrs./wk) | 77 (27 OT) | $1,248.75 | $69,930 |
| ≈ March 1, 2014 – February 28, 2015 (52 wks.) | $22.50 (= $900/wk. / 40 hrs./wk) | 95 (35 hrs./wk) | $1,856.25 | $96,993 |
| **TOTAL ESTIMATED OVERTIME** | | | | **$165,538.00** |

---

[4]      In early 2015, Defendants issued Mr. Guevara a 1099 for 2013 and a W-2 for 2014.

Thus, Mr. Guevara estimates that Defendants unlawfully failed to pay him overtime compensation in the approximate amount of $165,000. With liquidated damages under the Wage Act, *see Carroca*, 2013 WL 3496537, at *4, Defendants' potential exposure for overtime compensation alone exceeds **$450,000**.

    **C.** **Because the Defendants' other assets are subject to substantial tax liens and because one defendant is terminally ill, this Court must ALLOW the Plaintiff's Motion for Real Estate Attachment and Motion for Preliminary Injunctions to avoid irreparable harm to the Plaintiff, to provide for Plaintiff's recovery and to maintain the *status quo*.**

As addressed above, Mr. Guevara conservatively estimates Defendants' liability for failure to pay his salary at $146,000 for 2014 and 2015, including liquidated damages. He further estimates that Defendants' liability for overtime compensation and liquidated damages exceeds $450,000. After Mr. Guevara ceased working for Defendants, Defendants tendered to Mr. Guevara periodic payments totaling approximately $32,500. This sum represents just a small fraction of Defendants' liability in this case. Under the circumstances of this case an attachment in the amount of $250,000 is reasonable.

With the monies the Defendants failed to pay the Plaintiff, the Defendants custom built Wendy and Roland Hayes' home at 1 Boulder Way, Lynn, Massachusetts, from foundation up and renovated the restaurant significantly. See Exhibit H annexed, being City of Lynn 1 Boulder Way Tax Assessments (proving property was assessed as land until FY 2014). Therefore, real estate attachments in the name of Defendant Wendy Meninno Hayes, a.k.a. Wendy M. Hayes, and the Reach & Apply Defendant, 338 Broadway LLC must be ALLOWED by this Court, in addition to maintaining the *status quo*.

Pre-judgment security is particularly necessary in this case for two reasons. First, and regrettably, Defendant Wendy Hayes has represented to Mr. Guevara that she is terminally ill,

*see* Pl. Aff'd ¶ 41; in the unfortunate event that Ms. Hayes passes away before judgment enters, certain assets may be dissipated and there may be insufficient assets to satisfy a judgment.[5] Therefore, an attachment is necessary for Mr. Guevara not to be harmed irreparably by an executor's devise under a will's power of sale. Second, Defendants Rolly's Tavern and Roland Hayes are subject to tax liens exceeding hundreds of thousands of dollars, which may leave insufficient funds to satisfy a judgment in this case. *See* Ex. D. Plaintiff's claims are well in excess of $250,000.00 and must be protected pending judgment as a creditor.

The prejudgment attachment being sought are the sole known assets of the Defendants that are not subject to tax liens and may be the sole security for Plaintiff's recovery of harms, including the fundamental failure of Defendants to pay wages for services Mr. Guevara performed. It is reasonably foreseeable, in light of Defendants' willful violations of wage laws and their failure to meet their other known obligations, including taxes, that they will be unable to satisfy a judgment absent an attachment now. For these reasons, attachment must be issued to ensure Mr. Guevara's priority as a creditor when Mr. Guevara's claims for wage, overtime, liquidated damages and/or attorney's fees become judgment.

The more behind the Defendants became in paying Mr. Guevara his wages the more promises the Defendants made Mr. Guevara, including an agreement to be a 50% partner or owner of the business Defendant Hayes-Meninno, LLC.  Justice requires the prejudgment security sought by the Plaintiff respectfully via writ of attachment and order for preliminary injunctions against the Defendants and Reach & Apply Defendant.

---

[5]     For example, if Ms. Hayes has a will, the executor of her estate would have the power to sell the real property located at 1 Boulder Way, Lynn, Essex County, Massachusetts. *See* M.G.L. c. 190B, § 3-715(23 1/2). Additionally, bank and other accounts could transfer to death beneficiaries without probate. *See* M.G.L. c. 190B, § 6-101.

For all these aforementioned reasons, the Plaintiff requests respectfully that the relief sought be GRANTED.

Respectfully submitted,
MARIO H. GUEVARA-SALGADO,
By his attorneys,

/s/ Mernaysa Rivera-Bujosa
Mernaysa Rivera-Bujosa, Esq. (BBO #665965)
Rivera-Bujosa Law, P.C.
C-2 Shipway Place, Charlestown, MA 02129
P: (617) 398-6728
F: (617) 389-6730
E: mernaysa@riverabujosalaw.com


/s/ Michaela C. May
Michaela C. May, Esq. (BBO #676834)
Law Office of Michaela C. May
400 Massachusetts Avenue, Suite B
Arlington, MA 02474
P: (617) 863-6529
F: (617) 977-8774
E: attorneymay@gmail.com

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

I, Mernaysa Rivera-Bujosa, hereby certify that I conferred in good faith with Defendants in an attempt to resolve this matter before filing this motion.

/s/ Mernaysa Rivera-Bujosa
Mernaysa Rivera-Bujosa, Esq.

## CERTIFICATE OF SERVICE

I, Mernaysa Rivera-Bujosa, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

/s/ Mernaysa Rivera-Bujosa
Mernaysa Rivera-Bujosa, Esq.