UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MARIO H. GUEVARA-SALGADO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| HAYES-MENINNO, LLC, d/b/a ROLLY'S | ) | |
| TAVERN ON THE SQUARE, WENDY MENINO | ) | CIVIL ACTION |
| HAYES, and ROLAND JOHN HAYES, | ) | NO.  15-12294-PBS |
| | ) | |
| Defendants. | ) | |
| and | ) | |
| | ) | |
| 338 BROADWAY, LLC, | ) | |
| | ) | |
| Reach and Apply Defendant. | ) | |

## MEMORANDUM OF DECISION AND ORDER ON
## PLAINTIFF'S MOTION FOR REAL ESTATE ATTACHMENT

August 31, 2015

DEIN, U.S.M.J.

### I.  INTRODUCTION

The plaintiff, Mario H. Guevara-Salgado ("Guevara"), has brought this action against his

employer, Hayes-Meninno, LLC d/b/a Rolly's Tavern on the Square ("Rolly's Tavern"), and its

officers and alleged owners, Wendy Meninno Hayes and her husband Roland John Hayes.

Rolly's Tavern, a restaurant, is located at 338 Broadway, Lynn, Massachusetts.  That property is

owned by reach-and-apply defendant 338 Broadway, LLC which, the plaintiff alleges, is also owned by Wendy and Roland Hayes.[1]

By his complaint, Guevara alleges that the defendants failed to pay him overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1); failed to pay him wages in violation of the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, § 148; and failed to pay him minimum wages in violation of Mass. Gen. Laws ch. 151, § 1, and the FLSA, 29 U.S.C. § 206, in connection with his extensive work at Rolly's Tavern and the Hayes' related businesses during the period of approximately November 2012 through February 28, 2015.  Guevara has also asserted common law claims for breach of contract, breach of the implied covenant of good faith and fair dealing, quantum meruit, promissory estoppel, and for reach-and-apply relief.  The defendants, while admitting that some amounts are due Guevara, dispute his claim of hours worked, disagree as to the scope of his employment responsibilities, and contend that he was an independent contractor and not an employee in connection with some of the services provided.  In addition, they contend that Wendy Meninno has no liability for any unpaid wages.

This matter is before the court on "Plaintiff's Motion for Approval of Attachment of Real Estate in the Name of the Defendant Wendy Meninno Hayes, a.k.a. Wendy M. Hayes, and the Reach & Apply Defendant, 338 Broadway LLC" (Docket No. 9).[2]  By this motion, Guevara is

---

[1]  The defendants contend that Wendy Hayes is the sole owner of "Rolly's Tavern" and of 338 Broadway, LLC, but that Roland was solely responsible for running the restaurant, an issue which is in dispute.  RH Aff. (Docket No. 17-1) ¶¶ 1-3; WH Aff. (Docket No. 17-2) ¶¶ 3-3 (the Affidavit contains two paragraphs numbered 3).

[2]  Guevara has also moved for the entry of a preliminary injunction (Docket No. 10), which will be addressed in a separate decision of this court.

seeking a real estate attachment in the amount of $250,000.00 against the home of Wendy and

Roland Hayes located at 1 Boulder Way, Lynn, Massachusetts, which is owned by Wendy M.

Hayes, and the real estate located at 338 Broadway, Lynn, Massachusetts, which is owned by

the reach-and-apply defendant 338 Broadway LLC.  After careful consideration of the written

and oral arguments of the parties, this court finds that the plaintiff is likely to prevail on the

merits of his claim for violations of the FLSA and Wage Act, and that, while the amount of

potential damages is very much in dispute, the plaintiff is likely to recover more than the

amount of the requested attachment.  This court also finds that the plaintiff has established

that he is likely to prevail on the merits of his claim that Wendy Hayes is personally liable for

the amounts due.  Therefore, and for the reasons detailed more fully herein, the motion for a

real estate attachment is ALLOWED.

## II.   STATEMENT OF FACTS[3]

### Businesses of the Defendants

As noted above, Rolly's Tavern is a restaurant located in Lynn, Massachusetts.  In

addition, for a period of time the defendants operated "Rolly's on the Green," a restaurant at

the municipal golf course in Lynn.  RH Aff. ¶ 13.  Rolly's Tavern also catered various functions at

the golf course, restaurant and elsewhere.  Id. ¶ 14.  The restaurant at the golf course closed in

---

[3] The facts are derived from the plaintiff's Memorandum in Support of his Motion ("Pl. Mem.") (Docket No. 11) and exhibits thereto, including Plaintiff's Affidavit ("Pl. Aff."), which is attached thereto as Exhibit A (Docket No. 11-1); defendants' Memorandum in Opposition to plaintiff's Motions ("Def. Mem.") (Docket No. 17) and exhibits thereto, including the Affidavit of Roland J. Hayes ("RH Aff.") (Docket No. 17-1) and the Affidavit of Wendy M. Hayes ("WH Aff.") (Docket No. 17-2); and plaintiff's Reply Memorandum ("Pl. Reply Mem.") (Docket No. 19) and the exhibits thereto, including another Affidavit from the plaintiff ("Pl. Supp. Aff.") (Docket No. 19-1).

2013, but the catering business continued throughout the period of Guevara's employment. <u>See</u> <u>id.</u>

It is undisputed that both Roland and Wendy Hayes are publicly identified as the managers of the restaurant. <u>See</u> RH Aff. ¶ 1; WH Aff. ¶ 1. Nevertheless, the defendants seek to portray Wendy Hayes as having only marginal involvement in the day-to-day operations of the business. Thus, they assert, "Wendy Hayes was never in charge of, and never exercised authority in hiring, firing, or scheduling of kitchen staff throughout the time period Guevara was employed." RH Aff. ¶ 23. Rather, that was Roland's responsibility. <u>Id.</u>; <u>see</u> <u>also</u> WH Aff. ¶¶ 1, 2 (while Wendy was "more actively involved" in the day-to-day operations of the restaurant before she became ill in 2013, she was "never involved in the hiring, firing, scheduling, and payment decisions of the kitchen and/or cleaning operations, all of which were done by my husband Roland Hayes."). Noticeably, the defendants do not purport to describe Wendy's responsibilities in connection with the catering business, or her supervision of the plaintiff. According to Guevara, both Roland and Wendy Hayes "had the power to determine [his] wages, and so they did." Pl. Aff. ¶ 3. They also both "had the power to set [his] work schedule and did so periodically." <u>Id.</u> The evidence submitted to date supports Guevara's contention.

This court has scrutinized the parties' affidavits as well as the multitude of text messages between the plaintiff and Roland and Wendy Hayes submitted by the plaintiff. Based on this review, this court concludes that, for present purposes, the plaintiff has established that Wendy was actively involved in directing Guevara's employment responsibilities. Thus, there may have been a division of responsibility between Roland and Wendy, with Roland having

[4]

primary responsibility for running the restaurant[4] and Wendy responsible for running the catering business (including events held at the restaurant), but Guevara clearly worked under both of their supervision.  <u>See</u> Pl. Mem. at Exs B & C.  With respect to Wendy, in particular, she directed him to help set up events, pick up inventory, run errands, plan menus and even how to cook various items.  <u>See</u>, <u>e.g.</u>, 8/20/13 text message[5] from Wendy to Guevara ("I want to cancel caprese salad and have you make broccoli salad insted [sic].  Triple this recipe.  Ok.  2 heads broccoli, ½ medium red onion, ½ cup raisins, ½ cup crumbled bacon, 1 cup mayo, ½ cup sugar, 2 tablespoon red wine vinegar.  Ok").  She also told him what time to be in certain places and to perform certain tasks.  As detailed more fully below, there is sufficient evidence at this stage to establish that Wendy qualifies as Guevara's employer for purposes of the wage and hours laws.

### Overview of Plaintiff's Claims

Guevara began working for Rolly's Tavern in or about November 2011.  Pl. Supp. Aff. ¶ 3.  According to Guevara, he first began working one day a week, then about three days a week, and then, beginning in or about November 2012, five days a week.  Pl. Aff. at ¶¶ 2, 5-6.  According to Guevera, his responsibilities included "cleaning, cooking at the restaurant and outside parties, purchasing food, paper, coffee, and soda for the restaurant, and checking that the restaurant's inventory was delivered in a timely manner."  <u>Id.</u> ¶ 4.  His responsibilities also

---

[4]  The restaurant's website, www.rollystavern.com, describes Wendy Meninno Hayes and Rolly Hayes as the owners of the Tavern, and states that "Wendy runs the front of the house and Rolly runs the kitchen[.]"

[5]  In addition to the text messages contained in plaintiff's Memorandum at Exhibits B and C, the plaintiffs provided the court with copies of numerous text messages between the plaintiff and Wendy during oral argument.

included calculating employees' hours and pay, making deposits, paying certain bills, and even distributing some wages that were paid in cash.  Pl. Supp. Aff. ¶ 9.

Guevara contends that while his full time working hours were regularly 45 hours per week, he did not receive compensation for any hours in excess of 40.  Pl. Aff. ¶¶ 6, 8.  His hours continued to increase until around Christmas of 2012, when, Guevara alleges, he began working approximately 77 hours per week, still without compensation for any hours over 40.  Id. at ¶¶ 10-11.  It is undisputed that Guevara's hours were not recorded and he did not punch a time clock.  Id. ¶ 7.

According to Guevara, he went many weeks without pay or with only partial payments of amounts due.  Pl. Aff. ¶¶ 14-15.  In 2013, he twice confronted Roland Hayes about the situation.  Id. ¶¶ 16-19.  Guevara contends that, in response, Roland asked him to be kitchen manager, asked him to wait for his past-due wages, and promised him 50% ownership of the business and 50% of the profits in exchange.  Id. ¶ 20.  Guevara allegedly agreed to that arrangement, as a result of which he went for as much as six months without receiving any wages for his work.  Id. ¶¶ 23-24.  The defendants deny that such a promise was ever made. RH Aff. ¶ 21.

Guevara alleges that in or about March 2014 his hours increased dramatically to approximately 90-100 hours per week, a situation that continued to January 19, 2015, at which time he tendered his resignation.  Pl. Aff. ¶¶ 25-26.  Allegedly at Roland Hayes' request, he worked for another month, still without compensation, with his last day of work being approximately February 28, 2015.  Id. ¶¶ 27-28.

[6]

All parties agree that on February 16, 2015, Roland Hayes emailed Guevara a letter stating that Rolly's Tavern owed him $77,214.00 for his work as a "subcontractor" providing "cleaning and janitorial services in both the public restaurant areas and the kitchen and preparation areas[,]" "general maintenance on the physical property both inside and outside the premises[,]" and "inventory control of both cleaning supplies and restaurant food products." Id. ¶ 35; Pl. Mem. Ex. E (Docket No. 11-5).  The letter included a payment schedule. Pl. Mem. Ex. E.  A modified letter providing a different payment schedule was sent on March 19, 2015.  Pl. Aff. ¶ 37; Pl. Mem. Ex. F (Docket No. 11-6).  These letters were signed by Roland Hayes as "CEO" and printed on Rolly's Tavern letterhead.  Pl. Mem. at Exs. E & F.  Guevara contends that a great deal of pressure was put on him to countersign and accept the proposals in the letters, and drop his demands for wages.  Pl. Aff. ¶¶ 38-43.

The defendants admit that Guevara was owed money when he left, and assert that Guevara provided them with the figure of $77,214.00.  RH Aff. ¶¶ 17-19.  While Guevara does not deny providing this figure, he does contend that this amount is "only a fraction of the wages the Defendants owe me."  Pl. Aff. ¶ 36.  It is undisputed that from March 3, 2015 through June 4, 2015, when the defendants found out about this lawsuit, Guevara was paid $2,500 almost weekly in accordance with the letter of March 19, 2015.  RH Aff. ¶ 20.  According to the plaintiff, the defendants paid him $32,000 before the litigation started and another $2,500 after suit was filed but before they learned of the suit.  Pl. Mem. at 7.  The defendants put this figure at $37,500.  RH Aff. ¶ 20 & Ex. C.

**Defendants' Facts**

While the defendants' seek to paint a very different picture of the level of Guevara's involvement in their businesses, as detailed below the differences are likely to affect the level of damages to which Guevara is entitled, not the fact that the wage and hours laws have been breached.  The facts relating to at least some breaches are uncontested.

According to the defendants, Guevara was originally employed as a dishwasher one day a week and was paid by the hour.  RH Aff. ¶ 9.  While other employees used a time clock to record their hours, allegedly Guevara refused to do so.  Id. ¶ 10.  Over the years, Guevara spent more and more time at the restaurant, but it was because he did not want to go home, not because he was employed by the restaurant.  Id. ¶ 11.  Thus, according to the defendants, Guevara "would volunteer to run food, bus tables, and bar back for which the other employees would include him in tips[,]" but he was not employed to do so.  Id.

At some point, allegedly because of Guevara's inability to get along with some of the other staff, he was moved to work at "Rolly's on the Green," which was the restaurant at the municipal golf course owned by the City of Lynn.  Id. ¶ 13.  According to the defendants, through 2013, Guevara worked "closer to full time, possibly working over 40 hours a week in the summer, and less than 40 hours a week from Labor Day to Memorial Day."  Id.  He apparently worked on various functions at the golf course and elsewhere under the supervision of Wendy Hayes.  See WH Aff. ¶ 8.  Again, Guevara allegedly refused to use the time clock, though all the other employees recorded their time.  RH Aff. ¶ 13.  According to the defendants, Guevara was paid in full for his work through 2013.  Id.  It is unclear, however, how

the defendants knew he was paid in full through 2013 for this work, how much he was paid, and whether he was paid as an employee or an independent contractor.

The defendants' description of the events of 2013 is quite confused.  As best as this court can determine, it is the defendants' contention that in 2013, when the golf course restaurant closed and Wendy became ill, Guevara was moved back to Rolly's Tavern.  Id. ¶ 14.  According to the defendants, Guevara was hired to clean the restaurant and do inventtory, work normally done by independent contractors.  Id.  The arrangement, therefore, was to be that Guevara was to be paid as an outside contractor to clean and do inventory, and was to be paid $1,500 per week.  Any other work he did such as running food, bar back, etc., was done voluntarily and not as an employee.  Id.  They do admit, however, that Guevara worked with Wendy throughout 2013, and the text messages show that they worked together throughout that year on a regular basis.  The defendants contend that they paid Guevara $37,500 in 2013, which is reflected in a 1099.  RH Aff. ¶ 14 & Ex. A.  Guevara contends that he was not provided the 1099 form until 2015.  Pl. Supp. Aff. ¶¶ 18-19.  This court cannot determine how this amount was calculated, and why Guevara was not paid as an employee.  Other than providing the belated 1099 form, the defendants offer no explanation as to why they are treating Guevara as an independent contractor.

It is undisputed that at the end of 2013, Rolly's Tavern was assessed a sales tax deficiency in the amount of $330,905.79, allegedly as a result of computer errors.  RH Aff. ¶¶ 7, 15.  A tax lien was levied against Hayes-Meninno, LLC and Roland Hayes individually, but not Wendy Hayes.  Id. ¶ 7.  Significantly, according to the defendants, "Guevara offered to forego

his weekly check and take money as needed, with the balance to be paid later." Id. ¶ 15.  The agreement was that Guevara was to keep track of the amounts due.  Id.

Guevara apparently continued to work with the defendants throughout 2014, and although there does not appear to be any change in his responsibilities, his method of payment changed.  Thus, it is undisputed that Guevara was paid $8,000 through payroll checks in 2014, which was reported on a W-2.  Id. ¶ 16.  It is unclear to this court what these payments are supposed to reflect.  The defendants further allege that Guevara was paid an additional 10 checks in varying amounts totaling $34,835.44 in 2014, which were reflected in a 1099.  Id. & Ex. B.  Again, there is no explanation as to what these payments were for, and their purpose is not clear, especially in light of the defendants' contention that Guevara was basically volun-teering his services.

Guevara strongly denies receiving these payments, and contends that the alleged 1099 "is neither genuine nor accurate."  Pl. Reply Mem. at 4.  According to Guevara, the first time he saw the 1099 was after it was filed with the court.  Pl. Supp. Aff. ¶¶ 14-15.  According to Guevara, while he did receive some checks in 2014, "the Restaurant instructed me to cash those checks and use the funds to pay various employees whose wages the Restaurant paid in cash."  Id. ¶ 22.  Other times he was reimbursed for purchases of food and supplies he had made for the restaurant.  Id. ¶ 24.  Certainly these checks of varying amounts do not reflect payments of $1,500 per week.

According to the defendants, Guevara gave notice that he was quitting in 2015.  RH Aff. ¶ 17.  Since Guevara no longer wanted to do cleaning, another outside contractor was hired to take over these duties.  RH Aff. ¶ 18.  The extensive text messages between the parties refute

any contention that Guevara's involvement with the defendants at the time he left was limited to providing janitorial services.  As the text messages (Pl. Mem. Exs. B & C) are accurately summarized by the plaintiff:

> These text messages from the period of October 22, 2014 to May 24, 2015[6] depict Mr. and Ms. Hayes telling Mr. Guevara to make the restaurant specials; prepare dishes; purchase/order/receive inventory; notify who is working; cater events; shovel snow; make deliveries; purchase supplies; and open and close the restaurant.  *See* Ex. B & C. These text messages range as early as 8:30 a.m. in the morning to the late evening, showing Mr. or Ms. Hayes telling Mr. Guevara: "Who opens in kitchen today," "Don't forget specials I get on plane at 2:30," "Did you do specials" "Send me specials when u have done," "Order finger rolls...," "Stay till she closes"; "Can u bring the flowers the wine and beer over in 30 min if it's not too busy" Ex. B & C.

Pl. Mem. at 9.  Focusing specifically on the communications with Wendy, the plaintiff accurately summarizes the texts between July 22, 2013 and February 28, 2015 as follows:

> These messages show Ms. Hayes telling Guevara to, without limitation: "do time cards for snack shack," "cooking breakfast, dishes," "keep employees' schedules," pick up food, supplies, do parties off property or at Rolly's, cook orders, cook for the Defendants, arrange staff for catering, do food runs, host, and come by her house for various reasons.

Pl. Reply Mem. at 3.

     As noted above, in connection with Guevara's leaving, Roland allegedly asked Guevara how much he was owed, and Guevara allegedly told him $77,214.00.  RH Aff. ¶ 19.  According to Roland, he did not contest the amount, but needed time to pay it.  Id. ¶ 20.  It is undisputed that from March 3, 2015 through June 4, 2015, when the defendants found out about this lawsuit, Guevara was paid $2,500 almost weekly to pay off this amount.

---

[6]  Guevara's employment ended on February 28, 2015.  There are a few texts after that relating to Guevara getting the 1099 for 2013 and picking up a check.

According to the defendants, before he provided the figure of $77,214.00, Guevara had

been paid $10,495.00 on January 12, 2015[7] to buy a new Lexus.  Id. ¶ 17 & Ex. C.  He had also

been paid $3,800 through payroll.  Id. ¶ 17 & Ex. D.  Thus, according to the defendants, Guevara

was paid a total amount of $47,995.00 in 2015.  Id. ¶ 20.  Again there is no explanation as to

why some amount is being paid by payroll, and other amounts are (allegedly) reflected in

1099s.

Additional facts will be provided below.

### III.  ANALYSIS

"In order to obtain an order of pretrial attachment under Massachusetts law, a plaintiff

must demonstrate (1) a reasonable likelihood of success on the merits, and (2) a reasonable

likelihood of recovering judgment equal to or greater than the amount of the attachment

sought over and above any liability insurance shown by defendant to be available to satisfy

judgment."  Erkan v. N.E. Compounding Pharmacy, Inc., Nos. 12-12052-FDS, 12-12066-FDS,

2012 WL 5896530, at *1 (D. Mass. Nov. 21, 2012) (citing Mass. R. Civ. P. 4.1(c)).  In the instant

case, there is no insurance available.  As detailed herein, this court finds that Guevara has met

his burden of proof.

### A.  Likelihood of Success on the Merits

While the plaintiff has raised a number of legal issues, extended analysis is not required

at this stage, since the defendants' violations of some of the applicable wage and hours laws

are clear.

---

[7]  This is incorrectly referred to in Roland's Affidavit as 2014.

**Failure to Pay Timely Compensation**

Under the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, § 148, an employee must

be paid within six or seven "days of the termination of the pay period during which the wages

were earned[.]"  "One purpose of the weekly wage law is to ensure that employees receive

prompt payment of wages."  Wiedmann v. The Bradford Group, Inc., 444 Mass. 698, 831 N.E.2d

304, 308 (2005), superseded by statute on other grounds, Mass. Gen. Laws. ch. 149, § 150.

Violation of the statute entitles the plaintiff to treble damages, as liquidated damages, for any

loss of wages, and an award of costs and reasonable attorneys' fees.  Mass. Gen. Laws ch. 149,

§ 150.

Significantly, the statute provides that "[n]o person shall by a special contract with an

employee or by any other means exempt himself from *inter alia*, the requirement of timely

payment found in ch. 149, § 148.  See Mass. Gen. Laws ch. 149, § 148.  The language of the

statute makes it "plain that the Legislature intended to bar any contract between an employer

and employee that denied the employee the prompt payment of wages guaranteed by the

Wage Act."  Dobin v. CIOview Corp., No. 2001-00108, 16 Mass. L. Rptr. 785, 2003 WL 22454602,

at *5 (Mass. Sup. Ct. Oct. 29, 2003).  Consequently, even deferred compensation arrangements

to which an employee agreed violate the Wage Act.  Id.  Accord Stanton v. Lighthouse Fin.

Servs., Inc., 621 F. Supp. 2d 5, 16 (D. Mass. 2009) (finding that deferral agreement in written

employment contract "is void as a matter of law.").  In the instant case, the defendants admit

that they agreed in 2013 that Guevara would defer his weekly checks.  Thus, the defendants'

liability for violation of the Wage Act is clear.

The defendants assert, without discussion, that a big part of Guevara's job was cleaning the Rolly Tavern facility, work that had always been and was once again being done by an independent contractor.  Def. Mem. 12-13.  Thus, they contend, he was paid as an independent contractor, rather than an employee, and, therefore, not covered by the Wage Act.  See Stanton, 621 F. Supp. 2d at 10 (to make out a Wage Act Claim, plaintiff must prove that he was an employee under the statute).  Based on the record before this court, however, the defendants' argument is unpersuasive.  Mass. Gen. Laws ch. 148, § 148B "creates a presumption that a work arrangement is an employer-employee relationship unless the party receiving the services can establish that three factors are present.  First, the worker must be free from the presumed employer's control and direction in performing the service, both under a contract and in fact.  Second, the service provided by the worker must be outside the employer's usual course of business.  And, third, the worker must be customarily engaged in an independent trade, occupation, profession, or business of the same type."  Newport v. New A.D.E., Inc., No. 10-30095-RGS, 2011 WL 4790769, at 3 (D. Mass. Oct. 3, 2011) (quotations, footnotes and citations omitted).  "The burden is on [the employer] to establish these three elements, and it must establish each element."  Awuah v. Coverall N. Am., Inc., 707 F. Supp. 2d 80, 82 (D. Mass. 2010).  In the instant case, the record establishes that Guevara performed many more tasks than janitorial services.  Moreover, the work he did perform was under the control of Wendy and Roland Hayes.  The work done by Guevara was part of the business of Rolly's Tavern and its catering business.  Finally, there is no evidence that Guevara was engaged in a similar business separate and apart from his employment with the defendants.  Thus, at this stage in the litigation, the claim of Guevara being an independent contractor must fail.

[14]

**B.**   **Damages**

**Wage Act**

"[A]n employer found in violation of the Wage Act is required to pay treble the amount of wages and benefits that had been unpaid at the time the complaint was brought; the employer may not reduce this amount by making payment after it learns of the complaint." Dobin, 2003 WL 22454602, at *7.  Conversely, "an employer is not required to pay treble the lost wages and benefits if the wage and benefit payments were tardy but made before suit was brought." Id.  In the instant case, the amount of unpaid wages will undoubtedly be the subject of extensive discovery.  At this juncture, however, the court will accept the figure Guevara provided Roland Hayes at the time of his departure: $77,214.00.  Guevara has admitted that he received $34,500 towards this amount before the defendants learned of the litigation, leaving $42,714 in unpaid wages.  See Pl. Mem. at 12-13 (using a different analysis, Guevara calculates that, excluding overtime claims, defendants failed to pay him at least $42,400 in wages in 2014 and 2015).  Trebling $42,714 comes to $128,142.00.  Even under the defendants' calculations, only $37,500 was paid toward this amount leaving an unpaid balance of $39,714.  Trebling this amount comes to $119,142.

**Overtime Compensation**

Guevara calculates that he is owed $165,538.00 in overtime compensation for the period November 1, 2012 through February 28, 2015.  Pl. Mem. at 16-17.  While again recognizing that this amount will be hotly contested as the case progresses, this court finds that Guevara has met his burden of proving that he has a reasonable likelihood of recovering an

amount greater than the $250,000.00 attachment he is requesting for unpaid wages and

overtime compensation, plus attorneys' fees and costs.

Under the FLSA, an employee must be compensated in an amount equal to 1.5 times his

regular rate of pay for hours worked in excess of forty hours per week.  29 U.S.C. § 207(a)(1).

Failure to receive timely overtime payments subjects the employer to treble damages plus fees

and costs under Mass. Gen. Laws ch. 149, § 148 for failure to pay an employee all of the "wages

earned by him" within the prescribed period.  See Carroca v. All Star Enters. & Collision Ctr.,

Inc., No. 12-11202-DJC, 2013 WL 3496537, at *3-4 (D. Mass. July 10, 2013) (quoting Mass. Gen.

Laws. ch. 149, § 148).

Under the FLSA, it is the employer's obligation to "make, keep, and preserve" records of

the wages and hours of its employees.  29 U.S.C. § 211(c).  Department of Labor regulations

specify the detailed information which must be kept.  See 29 C.F.R. § 516.2(a).  In the instant

case, there is no dispute that the defendants violated the record-keeping provisions of the

FLSA.  Even accepting as true the defendants' assertion that Guevara refused to use the time

clock, this does not relieve the employer of its record-keeping obligations.

Admittedly, the burden is on Guevara to prove that he "performed work for which he

was improperly compensated."  Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686-87, 66

S. Ct. 1187, 1192, 90 L. Ed. 1515 (1946), superseded on other grounds by The Portal-to-Portal

Act of 1947, 29 U.S.C. § 251 et seq.  Where, as here, the employer has breached its duty to

maintain the mandated records of time worked, "an employee has carried out his burden if he

proves that he has in fact performed work for which he was improperly compensated and if he

produces sufficient evidence to show the amount and extent of that work as a matter of just

and reasonable inference.  The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.  If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate."  Id. at 687-88, 66 S. Ct. at 1192.

In the instant case, Guevara has filed an affidavit detailing his increasing hours of work. He has also provided text messages showing very long work days.  Under these circumstances, "there is a basis for a reasonable inference as to the extent of the damages."  Id. at 688, 66 S. Ct. at 1193.  See George Lawley & Son Corp. v. South, 140 F.2d 439, 442 (1st Cir. 1944) (where employer failed to keep time records, employee's testimony as to overtime work, based on a review of a diary of day's events, was sufficient: "[e]ntries such as these are enough to recall to the plaintiff's mind that he worked overtime on the days to which they relate, and it is not wholly beyond the bounds of credulity to believe that some of them may have refreshed the plaintiff's recollection as to the precise amount of overtime worked on some particular occasions.").  While nothing herein shall preclude the defendants from challenging the sufficiency of this evidence in the future, for present purposes the evidence presented is sufficient to establish a reasonable likelihood that the plaintiff will recover in excess of $250,000.00.  Trebling $165,538.00 comes to $496,614.00.  In addition, if he prevails, Guevara would also be entitled to recover costs and reasonable attorneys' fees.

C.     **Personal Liability of Wendy Hayes**

Finally, the plaintiff is seeking to attach the marital home, which stands in the name of Wendy Hayes, and the real property owned by 338 Broadway LLC, an entity owned, according

[17]

to the defendants, exclusively by Wendy.  For the reasons detailed herein, this court concludes that the plaintiff has established that he is likely to prevail on the merits of his claim that Wendy is liable for the unpaid wages.

Under the FLSA, an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee[.]"  29 U.S.C. § 203(d).  "The First Circuit has followed the Supreme Court's lead in interpreting this definition pursuant to an 'economic reality' analysis.  Accordingly, there may be multiple 'employers' who are simultaneously liable for compliance with the FLSA."  Chao v. Hotel Oasis, Inc., 493 F.3d 26, 33-34 (1st Cir. 2007) (citations omitted).  Thus, FLSA liability can attach to "corporate officers with a significant ownership interest who had operational control of significant aspects of the corporation's day to day functions, including compensation of employees[.]"  Id. at 34 (quoting Donovan v. Agnew, 712 F.2d 1509, 1514 (1st Cir. 1983)).  Similarly, under the Wage Act, "[t]he president and treasurer of a corporation and any officers or agents having the management of such corporation shall be deemed to be the employers . . . within the meaning of this section . . . ."  Mass. Gen. Laws ch. 149, § 148.  See Wiedmann, 444 Mass. at 711, 831 N.E.2d at 313.

In the instant case, plaintiff has submitted extensive evidence of Wendy's involvement in the day-to-day operations of that part of the business that employed Guevara.  She directed virtually all of his activities in connection with the catering business.  The affidavits submitted by Roland and Wendy attest that Wendy had limited involvement in the day-to-day operation of the restaurant.  Even assuming this to be true, the defendants do not, and seemingly cannot, deny her active participation in the management of the catering and function side of the business in which Guevara worked.

[18]

The defendants argue that Guevara must establish that Wendy exerted direct control *over the terms of his employment*.  See Def. Mem. (Docket No. 15) at 10-11 (emphasis added).  Assuming, arguendo, that this is a correct statement of the law, since Wendy "exerted actual operational control . . . a fact finder could infer power to hire and fire."  Gray v. Powers, 673 F.3d 352, 355 (5th Cir. 2012).  In light of Wendy's total ownership of the corporate employer, combined with her day-to-day responsibilities during the relevant time period, Guevara has met his burden of proving Wendy's personal liability.  Therefore, an attachment of her assets is appropriate.

This court does note the defendants' contention that the business has been appraised at being valued at $700,000 to $800,000.  RH Aff. ¶ 24.  This bald assertion, without any explanation, is not at all persuasive.  Moreover, it does not negate the fact of Wendy's potential personal liability.  The fact that there may be some value in the LLC does not undermine the propriety of a real estate attachment on property Wendy owns.

**ORDER**

For all the reasons detailed herein, plaintiff's motion for a real estate attachment is ALLOWED.  This court hereby approves a Real Estate Attachment in the sum of $250,000.00 pursuant to Mass. Gen. Laws ch. 223, § 67, Mass. Gen. Laws ch. 214, § 3(8), and Fed. R. Civ. P. 64 (a) on:

1.      Property in the name of the Defendant Wendy M. Hayes, which is numbered as 1 Boulder Way Lynn, Massachusetts 01904, being further described in a Deed recorded on September 15, 2011 with Essex South Registry of Deeds in Book 30658 Page 502; and

2.      Property in the name of the Reach & Apply Defendant, 338 Broadway LLC, which

is numbered as 338 Broadway, Lynn, Massachusetts 01904, being further described in Deed

recorded on November 23, 2010 with Essex South Registry of Deed in Book 29996 Page 251.

Plaintiff's counsel shall provide the court with a Writ of Attachment completed in

accordance with this decision for execution by the Clerk.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge